IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

————————————

JOHN MATHIAS,

        Plaintiff,

    v.                                         No. 09-CV-65 WJ/GBW

LEIGHTON REDHOUSE, DAMIAN
LUJAN and BRION BERRIOS, in
their individual capacities,

        Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

THIS MATTER comes before this Court upon Defendants' Motion for Summary Judgment, filed November 2, 2009 (**Doc. 40**). This is a civil rights and state tort law action arising from the alleged unlawful seizure and arrest of Plaintiff and the alleged unlawful seizure of Plaintiff's property. Having considered the parties' briefs and the applicable law, I find that Defendants' motion shall be partially granted for reasons set forth below.

### Background[1]

On July 20, 2008, Plaintiff John Mathias ("Plaintiff") was driving a motor vehicle within the Albuquerque city limits without a seatbelt.  At that time, he was a 79 year-old cancer survivor.  Defendant Redhouse was a law enforcement officer employed by the Albuquerque Police Department ("APD"), a governmental agency operated by the City of Albuquerque. Defendant Lujan was a public service aide, also employed by APD.

———————————————

[1]  These initial facts and description of the parties' positions are taken from the Pretrial Report (Doc. 46).

Plaintiff asserts claims under 42 U.S.C. §1983, alleging violations of his civil rights as guaranteed by the Fourth and Fourteenth Amendments.[2] These violations include unlawful seizure and arrest (Count I), excessive use of force (Count II), and unlawful seizure of property (Count III). In addition, Plaintiff asserts the state tort claims of assault, battery, false arrest and false imprisonment against all Defendants (Count IV). Defendants deny all of Plaintiff's allegations and assert the defense of qualified immunity.

## I.    Undisputed Facts[3]

Defendant Redhouse was on routine traffic patrol in a marked patrol car when he saw Plaintiff driving his vehicle (a pick-up truck) without wearing a seatbelt.  He positioned his patrol car behind Plaintiff's vehicle and turned on his signal lights. Plaintiff turned off from Central Avenue onto Atrisco and came to a lawful stop.  Defendant approached Plaintiff's vehicle, and informed Plaintiff that he had been stopped for failing to wear a seatbelt and for failing to use his turn signal as he turned off Central Avenue onto Atrisco.

Parties stipulate to very few facts, which are these: Plaintiff presented Defendant Redhouse with a hand-written note from N.B. Halpern, M.D. dated March 15, 1999. The note sets forth that as a result of a medical condition, Plaintiff cannot wear a seatbelt.  Defendant

---

[2]  Plaintiff's Fourth Amendment claims are applicable to the states through the Fourteenth Amendment.  *See Payton v. New York*, 445 U.S. 573, 576 (1980); *Gallegos v. City of Colo. Springs et al.*, 114 F.3d 1024, 1027 (10th Cir. 1997).

[3]  Many of the facts which are undisputed in this case are irrelevant to the issues which the Court must address.  For example, the Court sees no need to include facts regarding Defendants' length of employment with the force, exactly what time Plaintiff was stopped at a stop light by Defendant Redhouse, or in what directions and on what streets both parties were driving immediately before the incidents occurred which give rise to this lawsuit.  Plaintiff's claims arise from the point Plaintiff was stopped by Defendant Redhouse for not wearing a seatbelt.

Redhouse cited Plaintiff for failure to wear a seatbelt and failure to use a turn signal, then ordered Plaintiff to exit the vehicle, handcuffed him, and placed him under arrest for assault and battery. Defendant Lujan arrived at the scene at some time during the events. Plaintiff was placed in the back seat of Defendant Redhouse's patrol car.  Plaintiff requested that Defendant retrieve Plaintiff's backpack which contained his personal items, and the backpack was placed in the front seat of the patrol car. Plaintiff's vehicle was towed to an impound facility.  Plaintiff was transported by Defendant Redhouse to the Prisoner Transport Center, after which Defendant Redhouse had no further contact with Plaintiff.

## II.   Disputed Facts[4]

The parties' versions of events diverge after Plaintiff presented the doctor's note to Defendant Redhouse, and after Defendant Redhouse explained to Plaintiff that he was citing him for not wearing a seatbelt and for not using a turn signal.  *See* Statement of Undisp. Facts ("SUF") Nos. 13-16, and Responses.

At Defendant Redhouse's request, Plaintiff produced his driver's license, proof of insurance, registration, and a medical note purportedly excusing him from wearing a seatbelt under NMSA § 66-7-372(B).[5]  Defendant Redhouse went back to his patrol car to run a check on the information. Officer Redhouse returned to Plaintiff's vehicle and explained that he was citing him for not wearing a seatbelt and not using a turn signal.  Defendant Redhouse claims that he explained to Plaintiff that the note was nine years old, was in poor condition and that he was not sure if it was valid.  He told Plaintiff that he was going to issue the citation and let a judge decide

---

[4]  Plaintiff's exhibits are numbered, and Defendants' exhibits are lettered from A to I.

[5]  The provision allows an exception for a person "who possesses a written statement from a licensed physician that he is unable for medical reasons to wear a safety belt. . . ."

whether it was valid.  SUF 12; Ex. A at 34-35:2-19.  For what it is worth (because it is not material except perhaps to credibility), the belt tape conversation does not support Defendants' description of the detailed explanations purportedly made to Plaintiff about the medical note. (Ex. G, audio CD, Track 1, approx. minute marker 1:20 and 2:00 on Track 1).

Defendant Redhouse contends that as he was explaining the citations, Plaintiff suddenly grabbed Defendant Redhouse's hand and the pen he was holding, pulling his arm inside the truck. Ex. A at 42:1-25.  Defendant pulled back from Plaintiff, placed the citation book he was holding on top of the cab of the truck, opened the driver's side door and told Plaintiff to get out of the truck.  Ex. A at 44:14-19; 45:23-24; 46:2-11.  At this point, Plaintiff leaned back away from the open door and threw the pen at Defendant Redhouse, striking him in the chest.  Ex. A at 46:12-15.  Defendant Redhouse also claims that he felt a threat of immediate harm by Plaintiff's statement: "Marty will kick your ass." Ex. G (audio CD, Track 1, approx. minute marker 5:02-5:04).[6]  He then told Plaintiff to get out of the vehicle, after which Plaintiff was arrested and charged with assault and battery.

Defendant Lujan's testimony is similar to that of Defendant Redhouse.  Defendant Lujan, who arrived at the scene shortly after Defendant Redhouse pulled up behind Plaintiff's truck, recalled that Plaintiff grabbed Defendant Redhouse on the hand when he gave Plaintiff the clipboard to sign.  He also saw Plaintiff throw the pen at Defendant Redhouse. Ex. B at 20-21; 24:8-12.

---

[6]  The Court assumes that "Marty" refers to Martin Chavez, the former mayor of the City of Albuquerque, which seems to be a correct assumption.  *See* Doc. 40 at 7, SUF 25 ("the second [charge was based] on Plaintiff's verbal threat to have Mayor Chavez come after him."). It appears that Defendant Redhouse did not seem to understand the reference.  *See* Ex. A at 61:22-23 ("[Plaintiff is] threatening somebody, Marty, is going to be after me.").

Plaintiff denies that he grabbed Defendant Redhouse's hand or that he threw the pen at the officer. Instead, his story is that he when he reached for the pen the officer was holding to sign the citations, Officer Redhouse jerked his hand away as soon as Plaintiff had his fingers closed around the pen cap. Plaintiff dropped the cap, and it fell to the ground outside of Plaintiff's truck. Plaintiff concedes that Defendant Redhouse may have been startled when he dropped the pen cap to the ground. Defendant Redhouse then opened the door of Plaintiff's vehicle and told him to turn around, which Plaintiff did. Defendant wrenched Plaintiff's arms around him in order to handcuff him and was placed in the back of the patrol car for transport.

The audio CD of the belt tape (Ex. G) does not resolve which factual scenario is accurate. Plaintiff sounded very angry at being given a traffic citation because he was not wearing a seatbelt, in light of the fact that he had shown Defendant Redhouse the medical note. He complained more than once that Defendant Redhouse's conduct was a "f------g harassment." Plaintiff also told Defendant Redhouse that he was "hassling innocent citizens" instead of finding "criminals to shakedown." Ex. G, Track 1, approx. minute marker 1:50 - 2:40. However, at the critical moment – when Plaintiff contends he grabbed only the pen, but Defendant Redhouse contends that Plaintiff grabbed his hand – the only sounds heard on the CD for those short moments are some kind of movement, after which Defendant Redhouse is heard ordering Plaintiff to get out of the car.

### Discussion

Defendants seek summary judgment on all of Plaintiff's claims, and assert a defense of qualified immunity.

### I.    Legal Standard

When a government official raises defense of qualified immunity in motion for summary

judgment, the plaintiff must produce facts sufficient to show both that defendant's alleged conduct violated the law and that the law was clearly established when the alleged violation occurred. *Bruning v. Pixler*,  949 F.2d 352 (10th Cir. 1991).  Only then must defendant bear the usual summary judgment movant's burden of showing that no material issues of fact remain that would defeat claim of qualified immunity. *Id*.;  *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009) (if plaintiff succeeds in carrying his two-fold burden of production, the burden shifts back to the defendant and the analysis reverts to a traditional summary judgment analysis).

The Court shares Plaintiff's view that Defendant's motion is a "garden-variety" summary judgment motion.  Resp. at 11.  Defendant does not present any factual evidence or legal argument which would demonstrate that Plaintiff's Fourth Amendment rights underlying his claims for unlawful arrest, seizure of property and excessive force were not clearly established at the time of the underlying incidents.  Thus, the Court will focus on whether Defendants are entitled to dismissal of Plaintiff's claims under the usual summary judgment standard.

## II.     Fourth Amendment Unlawful Arrest and State Law Tort Claims of Wrongful Arrest and Detention

Defendants contend that Plaintiff's Fourth Amendment claims, as well as Plaintiff's related state law tort claims, should be dismissed because Officer Redhouse had probable cause to arrest him.

When a warrantless arrest is the subject of a §1983 action, in order to succeed, a plaintiff must prove that the officer lacked probable cause. *Buck v. City of Albuquerque*, 549 F.3d 1269, 1281 (10th Cir. 2008); *United States v. Brooks*, 438 F.3d 1231, 1241 (10th Cir.2006) (An officer has probable cause to arrest if, "under the totality of the circumstances, he learned of facts and circumstances through reasonably trustworthy information that would lead a reasonable person

to believe that an offense has been or is being committed by the person arrested").

A.      Fourth Amendment Unlawful Arrest Claim

Plaintiff was arrested for two counts of assault and two counts of battery. The first count of battery was based on Plaintiff's grabbing of Officer Redhouse's hand and pulling him into the vehicle. The second count was based on Plaintiff throwing the pen at Defendant and striking him in the chest.  Ex. A at 60-61:17-9; 61:13-23. The two assault charges were based on Plaintiff's action in leaning back and getting ready to throw the pen at Officer Redhouse, and then on Plaintiff's verbal threat to have Mayor Chavez come after him.  Ex. A at 61:13-23; Ex. F.

An assault under New Mexico law requires an act, threat, or menacing conduct which causes an individual to reasonably believe he is in danger of receiving an immediate battery. N.M.S.A. § 30-3-1; *see also State v. Ortega*, 113 N.M. 437 (N.M. Ct. App. 1992). A battery requires an unlawful, harmful, intentional, or offensive touching of another. *Id*; *Chavez v. Thomas & Betts Corp*., 396 F.3d 1088 (10th Cir. 2005).

The key question for Plaintiff's unlawful arrest claims is whether probable cause existed for Plaintiff's arrest.  The parties dispute whether Plaintiff grabbed Defendant Redhouse or only grabbed the pen held by Defendant Redhouse, but it is not disputed that Plaintiff made some move with his hand toward Defendant Redhouse.  The essence of Defendants' argument on this claim is that Defendant Redhouse reasonably perceived Plaintiff's conduct threatened his safety. Plaintiff was angry, using profane language, and initially refused to sign the citations.  Plaintiff's sudden movement to him could have ended in a battery or worse and thus, the arrest was based on probable cause that Plaintiff had committed an assault.

Defendants urge the Court to decide the probable cause question based on what Defendant Redhouse perceived, or rather – what he says he perceived.  As mentioned previously,

7

Defendants do not argue that Plaintiff has not alleged a viable constitutional claim, or that the contours of a Fourth Amendment claim were not clearly established with regard to the alleged facts. To the extent that Defendants assert the qualified immunity defense based on Defendant Redhouse's *perceptions*, that defense would fail because the reasonableness inquiry in qualified immunity is not directed toward a defendant's perception of the facts, but rather his conduct based on those facts. *See Ingels v. Thiokol Corp*., 42 F.3d 616, 620 (10th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986) (public official must show that no material issues of fact remain as to whether his **actions** were "objectively reasonable" in light of the law and the information he or she possessed at the time) (emphasis added). Moreover, determining whether probable cause existed for Plaintiff's arrest based on Defendant Redhouse's perception of the facts is impermissible because it reverses the burdens in a summary judgment proceeding. *See Trask v. Franco*, 446 F.3d 1036, 1043 (10th Cir.2006) (analysis of a summary judgment motion requires that the Court consider all the evidence in the light most favorable to the non-moving party). Viewing the evidence favorably to Plaintiff at this point, a juror could find that it was unreasonable for Defendant Redhouse to feel threatened by Plaintiff's actions, and that therefore probable cause did not exist for Plaintiff's arrest.[7]

Defendants also argue that the qualified immunity defense applies where an officer has "arguable," rather than "actual," probable cause – meaning that a law enforcement official can make an "objectively reasonable mistake" (Resp. at 12) about the existence of probable cause

---

[7] The assault statute requires that an individual **reasonably** believe he is in danger of receiving an immediate battery. N.M.S.A. § 30-3-1; *see also Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995) (When a warrantless arrest is the subject of a §1983 action, the defendant arresting officer is entitled to immunity if a **reasonable** officer could have believed that probable cause existed to arrest the plaintiff.) (emphasis added).

and still be entitled to the defense.[8]  *See Romero v. Fay* 45 F.3d 1472, 1476 (10th Cir. 1995) (law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity). Therefore, when a warrantless arrest or seizure is the subject of a § 1983 action, the defendant is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to arrest or detain the plaintiff.  *Id*. In this case, Defendants' reliance on the "arguable" probable cause still begs the question of whether Defendant Redhouse's actions – mistaken or not – were reasonable.  That question can be answered only based on the facts which occurred.

At present, there are two versions of the material facts.  While Defendants Redhouse and Lujan offer the same view of the incident, Plaintiff's sworn testimony provides a different set of facts. Because the Court may not make credibility determinations, that testimony is sufficient to withstand summary judgment on this claim. *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 150 (2000) (trial court may not weigh the evidence or consider credibility at summary judgment, but "can use the scale to a limited degree" by ensuring that nonmoving party "has at least a scintilla of evidence in support of its position."); *Lamon v. City of Shawnee, Kan*., 972 F.2d 1145, 1159 (10th Cir. 1992) ("It is the jury's exclusive province to assess the credibility of witnesses and determine the weight to be given to their testimony.").

---

[8] Plaintiff points out that the particular case cited by Defendants for the "arguable probable cause" theory, *Cortez v. McCauley*, 438 F.3d 980 (10th Cir. 2006), was vacated on rehearing en banc by *Cortez v. McCauley*, 478 F.3d 1108 (10th Cir. 2007).  Plaintiff is correct. However, the legal basis for Defendants' argument is sound, even though the Court finds that it does not apply in this case.  A defendant is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to arrest or detain plaintiff.  *See Cortez v. McCauley*, 478 F.3d 1108, 1120 (10th Cir. 2007) (citations omitted). Some courts have referred to this standard as "arguable probable cause."  *Romero v. Fay* 45 F.3d 1472, 1476, n.15  (10th Cir. 1995) (law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity).

Therefore, summary judgment is denied on Plaintiff's Fourth Amendment unlawful arrest claim.

B.      State Law Tort Claims of False Arrest and False Imprisonment Claims

The Court's findings related to Plaintiff's Fourth Amendment claim directly affects the disposition of Plaintiff's state law tort claims of wrongful arrest and detention.

False imprisonment involves the unlawful interference with the personal liberty or freedom of locomotion of another.  Both false arrest and false imprisonment require a showing of probable cause.  *Fuerschbach v. Southwest Airlines Co.*, 439 F.3d 1197, 1208 (10th Cir.) (based on New Mexico law). The existence of a material dispute of facts regarding whether Defendant Redhouse had probable cause to arrest Plaintiff precludes summary judgment on these claims as well.

**III.    Fourth Amendment Excessive Force and State Law Tort Claims of Assault and Battery**

Plaintiff contends that he suffered severe bruising to his wrists from being handcuffed while awaiting transfer from the substation to the detention facility, to the point where he was threatened with having his wedding ring cut off his finger.  Defendant Redhouse contends that he placed Plaintiff in handcuffs using no more force than reasonably necessary to do so.

A.      Fourth Amendment Excessive Force Claim

As a threshold matter, Plaintiff reads Defendants' position on this claim to mean that the excessive force claim should be subsumed into the unlawful arrest claim, relying on *Cortez v. McCauley*, 478 F.3d 1108, 1126 (10th Cir. 2007).[9]  Plaintiff states that he will dismiss his

---

[9]  The Court does not entirely agree with Plaintiff's interpretation of *Cortez* as it relates to subsuming the excessive force claim.  In fact, *Cortez* rejected the "notion that an excessive force

10

excessive force claims if Defendants will stipulate to the fact that Plaintiff was unlawfully arrested. Resp. at 14.  Since Defendants do not agree to stipulate to Plaintiff's unlawful arrest, Reply at 8, there is no need to determine whether Plaintiff's excessive force claim should be subsumed into the unlawful arrest claim in this case.

Defendants seek dismissal of the excessive force claim on two grounds: first, that the alleged force was perpetrated by personnel at the Prisoner Transport Center, and not by Defendant Redhouse; and second, that the force used by Defendant Redhouse was objectively reasonable, and not the cause of Plaintiff's alleged injuries.

The reasonableness of the officers' use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.  Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.  *Cortez*, 478 F.3d at 1125 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  The reasonableness inquiry in an excessive force case is an objective one:  whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to his underlying intent or motivation.  *Id*.

Unduly tight handcuffing can constitute excessive force where a plaintiff alleges some actual injury from the handcuffing and alleges that an officer ignored a plaintiff's timely complaints (or was otherwise made aware) that the handcuffs were too tight."  *Fisher v. City of Las Cruces*, 584 F.3d 888, 897 (10th Cir. 2009); *Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th

---

claim is subsumed in an unlawful arrest claim" based on the facts of that case. The Tenth Circuit acknowledged that a rule whereby the excessive force claim would be subsumed into the unlawful arrest claim "might control where a plaintiff's excessive force claim is dependent *solely* on the absence of the power to arrest or detain." 478 F.3d at 1127.  However, like the plaintiff in *Cortez*, Plaintiff here alleges facts which are broader than would be required to apply that rule.

Cir. 2007).[10]  Thus, Plaintiff must show both that the force used was more than reasonably necessary and "some actual injury caused by the unreasonable seizure that it is not de minimis, be it physical or emotional."  478 F.3d at 1129 n. 25.

Plaintiff's own deposition testimony absolves Defendant Redhouse of excessive force allegations. Parties do not dispute that following the arrest, Officer Redhouse drove Plaintiff directly to the Prisoner Transport Center at First Street and Gold in Albuquerque ("PTC") and relinquished custody of the Plaintiff.  Plaintiff testified that the person(s) who allegedly jerked his arms, twisted the handcuffs, and caused bruising to his arms were "the goons" at the PTC.[11] When Plaintiff complained that he was being hurt, one of the them individuals replied only, "Stupid shit." Ex. D at 13-15:10-1. The alleged comment to Plaintiff about the possibility of having his wedding ring cut off his finger was made by someone at the Bernalillo County Detention Center, where Plaintiff was taken after leaving the PTC.  Ex. D at 14-15:17-11. Plaintiff unequivocally admitted that Officer Redhouse did not participate in any of this conduct. Ex. D at 15:12-18.

The right to make an arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Cortez*, 478 F.3d at 1125 (citing *Graham*, 490 U.S. at 396)); s*ee also Atwater v. City of Lago Vista*, 532 U.S. 318, 354-55 (2001) (noting that a

---

[10]   Plaintiff insists that there is no legal support for a requirement that notice be given to the officer in an excessive force claim.  However, the Court agrees with Defendants that there is such a requirement under Tenth Circuit law for excessive force claims based on handcuffs being applied too tightly. *See Cortez*, 478 F.3d 1108.

[11]   In the Complaint, Plaintiff stated that he awaited transfer to the detention facility from an Albuquerque Police Department substation.  Compl., ¶ 17.  However, in his deposition, Plaintiff stated that the events surrounding his excessive force claim occurred at the PTC.  Ex. D at 14-15:24-7.  Also, Plaintiff does not dispute SUF 20, in which Defendants state that Defendant Redhouse drove Plaintiff to the PTC after his arrest.

normal lawful custodial arrest where one is handcuffed, placed in a patrol car, and taken to the police station may be inconvenient and embarrassing, but not violative of the Fourth Amendment).  Plaintiff's allegations of excessive force against Defendant Redhouse are premised entirely on the use of handcuffs.  The use of handcuffs, in or of itself, does not amount to excessive force.  Plaintiff testified that the only times Officer Redhouse ever physically touched him were when the officer took hold of Plaintiff's wrists as he put the handcuffs on him, and again when he walked Plaintiff to the patrol car.  Ex. D at 10:2-17.  Plaintiff indicated that Defendant Redhouse did not injure him in any manner.  Ex. D at 16:1-3.  When pressed further to describe any kind of injury he might have suffered at the hands of Defendant Redhouse, Plaintiff claimed it was "injurious" for him to be sitting in the back of the patrol car (the "plastic bathtub") on a very hot day with the windows rolled up.  Ex. D at 16:5-13.

The excessive force claim cannot withstand summary judgment scrutiny because the minimal contact between Plaintiff and Defendant Redhouse did not result in an actual injury caused by excessive force.  *Cmp.,Cortez*, 478 F.3d at 1129 (injury from tight handcuffs resulting in red marks visible for days afterward was insufficient, as a matter of law, to support an excessive force claim ). Plaintiff does not dispute that he did not complain to Defendant Redhouse that his handcuffs were too tight; nor does he describe an "injury" which comports with an actual injury compatible with the use of excessive force in the application of handcuffs or during the arrest.   All of the alleged injuries – the twisting of handcuffs and the bruising of arms – are the result of the actions of other individuals who are not parties to this action.

Defendants contend that Plaintiff has not shown that Defendant Redhouse's minimal contact with him was the cause in fact of any injury, and notes that Plaintiff has not provided a Rule 26 report from a medical doctor to substantiate the alleged cause of the injury.  Plaintiff

13

argues that there is no legal basis for this requirement.  The Court need not resolve the issue, since Plaintiff has not provided any evidence of an actual injury caused by Defendant Redhouse based on any other source.  In order to withstand summary judgment on the issue of causation, Plaintiff must come forth with some evidence, but he has failed to do so.  *See Adler v. Wal-Mart Stores, Inc..*, 144 F.3d 664, 671 (10th Cir.1998) ( it may satisfy its burden at the summary judgment stage by identifying "a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." )

As if realizing that the game is no longer afoot (at least with regard to the excessive force claim), Plaintiff presents the implausible argument that Defendant Redhouse is liable because he "set in motion" a series of events that Defendant Redhouse knew, or should have known, would cause Plaintiff's constitutional rights to be violated.  In support of this argument, Plaintiff relies on *Snell v. Tunnell*, 920 F.2d 673, 700 (10th Cir. 1990) for the proposition that direct participation is not necessary for liability under § 1983, and that any official who "causes" a citizen to be deprived of her constitutional rights can also be held liable.  However, *Snell* is neither factually analogous or legally pertinent.  *Snell* was a §1983 conspiracy case.  Plaintiffs in that case alleged that defendants, who were employees of child welfare services, assisted or acquiesced in the use of information known to be false concerning the Snells's involvement in child prostitution and pornography, in order to further a licensing investigation and retaliate against them.  The false information was used to get a court order to gain entry into the Snell home and custody of the seven children for which the Snells could not produce court custody documents.  In that case, the Tenth Circuit noted that causal connection in a § 1983 case was satisfied because the defendants "set in motion" the investigation in procuring a court order based on known false allegations.

14

In this case, there is no evidence indicating that Defendant Redhouse promoted, suggested, or indirectly caused or conspired with any PTC personnel to use alleged excessive force in the re-application of handcuffs on Plaintiff.  Neither is there any evidence to infer in slightest that Defendant Redhouse knew, or should have known, that Plaintiff would be subjected to the alleged excessive force at PTC.  Moreover, unlike *Snell*, where the procuring of a court order would naturally set in motion a process or investigation based on that order, there is no rational connection between Defendant Redhouse transporting an arrestee to PTC and setting in motion the use of excessive force.  Without that link, Plaintiff's claim of excessive force fails. *See Meade v. Grubbs*, 841 F.2d 1512, 1527 (10th Cir. 1988) (plaintiff must allege some personal involvement by a defendant in the constitutional violation).

Even viewing all the evidence in Plaintiff's favor, I find that no reasonable juror would find that Defendant Redhouse used excessive force on Plaintiff before, during or after the arrest.

B.     State Tort Law Claims of Assault/Battery

An assault under New Mexico law requires an act, threat, or menacing conduct which causes the plaintiff to reasonably believe he is in danger of receiving an immediate battery. NMSA § 30-3-1; *Chavez v. Thomas & Betts Corp*. 396 F.3d 1088 (10th Cir. 2005) (citing *State v. Ortega*, 113 N.M. 437 (N.M. Ct. App. 1992)). Battery is the unlawful, intentional touching or application of force to the person of another, when done in a rude, insolent or angry manner. NMSA § 30-3-4.[12]

There is no dispute of fact about who perpetrated the alleged excessive force, and where

---

[12]  Defendants rely on NMSA § 30-22-24(A), which defines battery upon a peace officer while he is in the lawful discharge of his duties.  The Court instead refers to § 30-3-4, which seems to be more applicable to Plaintiff's claim of alleged battery against Defendant Redhouse.

it occurred.  During Defendant Redhouse's minimal contact with Plaintiff in applying the handcuffs, no unreasonable force was used, and no injury occurred.  Plaintiff's own statements describe the excessive force as being committed by PTC personnel after Defendant Redhouse relinquished custody of Plaintiff. In light of these findings, Plaintiff's assault and battery claims cannot survive summary judgment.  *See Tanberg v. Sholtis*, 401 F.3d 1151, 1163 (10th Cir. 2005) (New Mexico law permits an officer "to use such force as [is] reasonably necessary under all the circumstances" to effect an arrest. (citing *Mead v. O'Connor* 66 N.M. 170 (N.M.1959)).

## IV.    Fourth Amendment - Unlawful Seizure of Property

Plaintiff also alleges a Fourth Amendment unlawful seizure of his property because APD retained custody of his backpack.  It was not returned to him until he visited the evidence room at APD to retrieve the backpack, 12 or 13 days after the arrest.  During a telephone call with APD on the morning of July 21, Plaintiff learned that his backpack had been placed in evidence. Ex. D at 41-42:23-6.

It is undisputed that Defendant Redhouse put the backpack in the front seat of the patrol car when he transported Plaintiff to the PTC.  It is also undisputed that when PTC refused to accept Plaintiff's backpack, Officer Redhouse took it to the police sub-station where he inventoried its contents and tagged it into evidence for safe keeping.  Ex. A at 14-15:1-23; 57-58:19-14.  Defendant Redhouse contends that he never told Plaintiff or anyone else that Plaintiff's backpack or its contents were being retained by APD as evidence.  However, what Plaintiff was told about why his backpack was being retained is not relevant to the Fourth Amendment inquiry.  What *is* relevant is whether Defendant Redhouse's actions were reasonable.

Plaintiff suggests that his backpack should have accompanied him as he was transported

16

away accompany him as he was transported away from the scene of his arrest, and relies upon

the deposition testimony of Police Commander Conrad Candelaria to argue that the standard

policy for arrests by the APD is for personal belongings to be "attached" to the prisoner.  Ex. E

at 14:10-14.  This is a correct, but incomplete reference to the testimony.  Commander

Candelaria went on to say that

> there have been occasions where, for whatever reason. . . perhaps whether it's the
> booking as far as the processing that took place at the booking area or booking
> stage or with the [PTC] where they will not take the property. . . So what we do to
> ensure . . . . the safety of that by tagging them into evidence, rather than leaving
> them in the vehicle.

Ex. E at 14:14-24.

I find that Defendant Redhouse's conduct does not rise to the level of a constitutional

level because it was a reasonable way to ensure the safety of Plaintiff's backpack –  regardless of

whether there were other options which Plaintiff would have preferred.

Plaintiff complains of having to undergo a "tedious process" in order to locate the

whereabouts of his property and retrieve the backpack.  Having to endure the inconveniences of

a bureaucratic hassle does not a constitutional violation make.  Plaintiff argues that Defendant

Redhouse "set into motion" the series of events which he knew, or reasonably should have

known, would lead to a constitutional violation.  This argument did not work for Plaintiff's

excessive force claim, and it is not effective for this claim, either.  Defendant Redhouse cannot

be blamed for creating or inflicting the "red tape" which caused the delay in the return of

Plaintiff's backpack.  Therefore, Defendants are entitled to summary judgment on Count III of

the Complaint.

**V.     Whether Defendant Lujan Should be Dismissed**

Law enforcement officials have an affirmative duty to intervene to protect the

constitutional rights of citizens from infringement by other law enforcement officers in their

presence. An officer who fails to intercede is liable for the preventable harm caused by the

actions of the other officers where that officer observes or has reason to know: (1) that excessive

force is being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional

violation has been committed by a law enforcement official. In order for liability to attach, there

must have been a realistic opportunity to intervene to prevent the harm from occurring. Whether

an officer had sufficient time to intercede or was capable of preventing the harm being caused by

another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable

jury could not possibly conclude otherwise. *Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir.1996);

*Vondrak v. City of Las Cruces*, 535 F.3d 1198 (10th Cir. 2008).

      Plaintiff asserts that Defendant Lujan witnessed the events but failed to intervene,

thereby providing support for Defendant Redhouse's actions.  It is undisputed that as of July 20,

2008 Defendant Lujan had been employed by the City of Albuquerque for about one year as a

Public Service Aide ("PSA").  It is not clear whether Defendant Lujan saw Defendant Redhouse

conducting a traffic stop, and pulled up his vehicle behind Defendant Redhouse's patrol car or

whether he was called to the scene by Defendant Redhouse.  SUF No. 5 and Response. [13]

However, it is undisputed that Defendant Lujan arrived at the scene at some point during the

underlying events.

      Defendants argue that Defendant Lujan is not a law enforcement officer, and thus it was

not reasonable for him to recognize whether Defendant Redhouse's arrest was unconstitutional

or violated state law, or whether it was reasonable to intervene in the arrest even if the arrest was

---

[13]  Defendant Lujan does not recall if he was dispatched to the scene, but does  remember driving by and seeing Defendant Redhouse pulling up behind Plaintiff.  Defts Ex. B at 13.

unconstitutional or in violation of state law.  Thus, the inquiry in this section rests on whether Defendant Lujan is a law enforcement officer.

By way of deposition testimony from both Defendant Lujan and Detective Harold Medina, Defendants offer evidence to show that a PSA has no police training year. A PSA's duties include traffic assistance, assisting with tows, issuing parking citations and assisting police officers with paperwork. "anything administrative that is non-law enforcement related." Ex. C at 31:8-19; Ex. B at 4:11-22.  Defendant Lujan stated that he had no specific knowledge of the seatbelt laws of the State of New Mexico, and had not attended a law enforcement academy. Ex. B at 19-20:24-5.   He was training in traffic accident investigation, parking citations, report writing, vehicle tow, talking on the radio, using the computer, use of Ten Codes, and reading CADs. Ex. B at 38:11-25.  PSA's are trained with non-lethal types of force options (mace, baton) for their own safety in order to provide a level of backup assistance in an emergency situation. Ex. C at 32:6-15.

Detective Medina's affidavit (provided by Defendants in addition to his deposition testimony) clearly defines the contours of a PSA's job functions:

> A [PSA] does not attend a police academy and receives no training on Constitutional Law, Fourth Amendment or New Mexico State Law pertaining to arrest, excessive force, seizure, or probable cause. A PSA is not recognized as, or considered to be a police officer or law enforcement officer. A PSA's duties are primarily limited to assisting police officers with traffic accidents, assisting police officers with misdemeanor offenses, delivering paperwork, and parking enforcement such as writing parking tickets. . . PSA's are not responsible for maintaining public order for the majority of their time at work.

Ex. H (Medina Aff.).

In stark contract, Plaintiff offers no evidence that would create an issue of fact, such as affidavits or deposition testimony.  In its place, Plaintiff offers only an APD website and

19

incomplete quote from the Albuquerque Police Department, Monthly Report, January 2009. The

online website states that a PSA "assists officers on patrol with traffic accidents, misdemeanor

offenses, delivery of paperwork, parking enforcement and many other duties and

responsibilities."[14]   Plaintiff states that PSA training requires aides to "learn about the APD

policies and procedures."  Resp. at 20.  However, the PSA job description contains no such

requirement, actually stating that it "**allows** potential cadets to learn about the [APD] and its

policies and procedures." (emphasis added).   Plaintiff's Exhibit 5, an APD monthly report,

states that "PSA's continued to strictly enforce handicap parking regulations and vehicles that

are illegally parked or abandoned."  None of this creates a triable issue of fact on whether

Defendant Lujan is a law enforcement officer.

     Plaintiff also argues that Defendant Lujan "directly counseled" Defendant on what

charges should be brought against Plaintiff, and how the charges should be articulated on the

citation.  Resp. at 19.  However, according to Defendant Redhouse, the only voices on the belt

tape are that of himself, Plaintiff and Officer Brion Berrios, a named Defendant in this case.[15]

Ex. I (attached to Reply).[16]

---

[14]   http://www.apdonline.com/requirements/aide.html.

[15]   According to Defendants, the parties previously agreed to the dismissal of Defendant
Brion Berrios, although it was not known whether an order granting the dismissal had been
presented to the Court.  Doc. 41 at 2, n.1.  For counsel's edification, the Court docket does not
indicate that such an order has been presented to the Court.

[16]   Plaintiff presents no basis for the statement that the voice heard on the tape advising
Defendant Redhouse how to charge Plaintiff was Defendant Lujan.  Ex. G (CD, Track 1, approx,
minute marker 13:30-19:00).  However, Defendants have at least provided some evidence that
the voice heard was **not** Defendant Lujan.  Also, in light of the evidence presented by
Defendants concerning the lack of training Defendant Lujan received in the law, the Court is
convinced that Defendant Lujan was not the person advising Defendant Redhouse.  It seems that
it should have been relatively simple for Plaintiff to double-checked the identity of the other

Finally, the Court did its own checking into what New Mexico considers a "law enforcement officer":

> a full-time salaried public employee of a governmental entity, or a certified part-time salaried police officer employed by a governmental entity, whose principal duties under law are to hold in custody any person accused of a criminal offense, to maintain public order or to make arrests for crimes, or members of the national guard when called to active duty by the governor. . . .

NMSA 1978 § 41-4-3(D).   This definition bolsters the evidence presented by Defendants that Defendant Lujan is not a law enforcement officer.  Given his limited training and job responsibilities, Defendant Lujan cannot be attributed the knowledge and function of a law enforcement officer and thus cannot be liable for Plaintiff's alleged failure to intervene.

### Conclusion

In sum, I find and conclude that Defendants are denied summary judgment on Plaintiff's Fourth Amendment claim of unlawful arrest, and state law claims of false arrest and false imprisonment based on the existence of material facts regarding whether there was probable cause for Plaintiff's arrest.

I find and conclude that Defendants are entitled to summary judgment on Plaintiff's Fourth Amendment excessive force claim, and on Plaintiff's state law tort law claims of assault and battery. Even viewing all the evidence in Plaintiff's favor, I find that no reasonable juror would find that Defendant Redhouse used excessive force on Plaintiff before, during or after the arrest, based on Defendant Redhouse's minimal contact with Plaintiff, the lack of cognizable injury which occurred, and lack of causation for the alleged injuries by Defendant Redhouse. Also, in light of the Court's findings that Defendant Redhouse used only reasonable force in

---

voice on the belt tape CD before blindly asserting that it was the voice of Defendant Lujan.

effecting Plaintiff's arrest and applying handcuffs, assault and battery claims cannot survive summary judgment.

I find and conclude that Defendants are entitled to summary judgment on Plaintiff's Fourth Amendment claim of unlawful seizure of property because Defendant Redhouse's conduct in safekeeping Plaintiff's backpack was reasonable.

Finally, I find and conclude that Defendant Lujan is not a law enforcement officer, and thus entitled to summary judgment regarding all of Plaintiff's claims based on a failure to intervene.  While Plaintiff has included Defendant Lujan in Counts I, II, and IV, as well as in Count III, that Defendant's liability was premised on his failure to intervene.  In light of my findings as to that assertion, all of Plaintiff's claims against Defendant Lujan shall be dismissed.

What remains in this case are: Plaintiff's Fourth Amendment claim of unlawful arrest, and his state law claims of false arrest and false imprisonment.

**THEREFORE,**

**IT IS ORDERED** that Defendants' Motion for Summary Judgment **(Doc. 40)** is hereby GRANTED with regard to the following claims:

(1) Plaintiff's Fourth Amendment excessive force claim (Count II);

(2) Plaintiff's state law tort claims of assault and battery (part of Count IV);

(3) Plaintiff's Fourth Amendment claim of unlawful seizure of property (Count III);

 **IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment is hereby DENIED with regard to the following claims:

(1) Plaintiff's Fourth Amendment claim of unlawful seizure and arrest (Count I);

(2) Plaintiff's state law tort claims of false arrest and false imprisonment;

**IT IS FINALLY ORDERED** that based on the Court's finding that Defendant Lujan

22

cannot be held liable for a failure to intervene, all of Plaintiff's claims against this Defendant are

hereby DISMISSED and that DEFENDANT LUJAN is hereby DISMISSED AS A

DEFENDANT in this case.

_____

UNITED STATES DISTRICT JUDGE